FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 13, 2020

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JENNIFER J.,[1]

             Plaintiff,

    v.

ANDREW M. SAUL, the Commissioner
of Social Security,[2]

             Defendant.

No.    4:19-CV-5173-EFS

**ORDER GRANTING PLAINTIFF'S
SUMMARY-JUDGMENT MOTION
AND DENYING DEFENDANT'S
SUMMARY-JUDGMENT MOTION**

Before the Court are the parties' cross summary-judgment motions.[3] Plaintiff Jennifer J. appeals the denial of benefits by the Administrative Law Judge (ALJ). She alleges the ALJ erred by 1) improperly weighing the medical

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to her by first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] Because Andrew Saul is the Commissioner of the Social Security Administration, the Court substitutes him as the Defendant. *See* Fed. R. Civ. P. 25(d).

[3] ECF Nos. 9 & 11.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

opinions; 2) improperly determining that the impairments did not meet or equal Listing 11.02B; 3) discounting Plaintiff's symptom reports; and 4) failing to properly consider lay statements. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court grants Plaintiff's Motion for Summary Judgment, ECF No. 9, and denies the Commissioner's Motion for Summary Judgment, ECF No. 11.

## I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[4] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[5] If the claimant is engaged in substantial gainful activity, benefits are denied.[6] If not, the disability-evaluation proceeds to step two.[7]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical

---

[4] 20 C.F.R. § 416.920(a).

[5] *Id.* § 416.920(a)(4)(i).

[6] *Id.* § 416.920(b).

[7] *Id.*

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 2

or mental ability to do basic work activities.[8] If the claimant does not, benefits are denied.[9] If the claimant does, the disability-evaluation proceeds to step three.[10]

Step three compares the claimant's impairment(s) to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[11] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[12] If an impairment does not, the disability-evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[13] If the claimant is able to perform prior work, benefits are denied.[14] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national

---

[8] 20 C.F.R. § 416.920(a)(4)(ii).

[9] *Id.* § 416.920(c).

[10] *Id.*

[11] *Id.* § 416.920(a)(4)(iii).

[12] *Id.* § 416.920(d).

[13] *Id.* § 416.920(a)(4)(iv).

[14] *Id.*

economy—considering the claimant's RFC, age, education, and work experience.[15]
If so, benefits are denied. If not, benefits are granted.[16]

The claimant has the initial burden of establishing entitlement to disability
benefits under steps one through four.[17] At step five, the burden shifts to the
Commissioner to show that the claimant is not entitled to benefits.[18]

## II.    Factual and Procedural Summary

On October 18, 2009, Plaintiff filed a Title XVI supplemental security
income application.[19] The claim was denied initially and upon reconsideration.[20] An
administrative hearing was then held in 2012 after which the ALJ denied
Plaintiff's claim.[21]

Plaintiff appealed the ALJ's denial to federal district court. The parties
agreed to a stipulated remand, which was accepted by the district court.[22] A second

---

[15] 20 C.F.R. § 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[16] 20 C.F.R. § 416.920(g).

[17] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[18] *Id.*

[19] AR 173-85.

[20] AR 98 & 112.

[21] AR 26.

[22] AR 733-34.

administrative hearing was held in 2016 after which the ALJ denied Plaintiff's claim.[23]

Plaintiff appealed the ALJ's denial to federal district court. The district court remanded the case to the Commissioner of Social Security for further proceedings. A third administrative hearing was held in 2019 before ALJ R.J. Payne, who also denied the claim.[24]

In denying Plaintiff's disability claim, the ALJ made the following findings:

- Step one: Plaintiff had engaged in substantial gainful activity April 2015 through December 2017. Plaintiff did not engage in substantial gainful activity during the requested closed period October 18, 2010, to March 31, 2015.

- Step two: Plaintiff had the following medically determinable severe impairments: headache disorder, asthma, depressive disorder, attention deficit hyperactivity disorder (ADHD), anxiety disorder/panic disorder, and posttraumatic stress disorder (PTSD).

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

---

[23] AR 1114-26.

[24] AR 1056-1110.

- RFC: Plaintiff had the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations:

  > [Plaintiff] must avoid concentrated exposure to pulmonary irritants, extreme cold, loud noise, unprotected heights, heavy industrial-type vibrations, and strong (above 25 MPH) wind. Mentally, [Plaintiff] can understand, remember, and carry out simple, routine and/or repetitive work instructions and work tasks; can handle superficial contact with the public; can work with or in the vicinity of coworkers, but not in a teamwork-type work setting; can handle normal supervision (i.e. no over-the-shoulder or confrontational type supervision[)]; would do best in a routine setting with little or no changes; and is precluded from fast-paced or strict quota-type work.

- Step four: Plaintiff was not capable of performing past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as office cleaner, mail clerk, and small parts assembler.[25]

When assessing the medical-opinion evidence, the ALJ gave:

- great weight to the opinions of testifying expert Ellen Rozenfield, Ph.D. and the State agency medical consultants;

- significant weight to the opinion of testifying expert William Debolt, M.D.;

---

[25] AR 1033-44.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

- little weight to the opinions of primary care physician Ronaldo Luanzon, M.D; Melanie Edwards, LMHC; Jan Kouzes, Ed.D; and Mark Duris, Ph.D.; and

- no weight to the opinions of testifying experts John Morse, M.D. and Margaret Moore, Ph.D., and the opinions that predated Plaintiff's filing date.

The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.[26] Likewise, the ALJ discounted the lay statements from Plaintiff's friend and coworker.[27]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review. Plaintiff timely appealed to this Court.

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[28] The Commissioner's decision is set aside "only if it is not supported by substantial

---

[26] AR 1039.

[27] AR  1043.

[28] 42 U.S.C. § 405(g).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 7

evidence or is based on legal error."[29] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[30] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[31] The Court considers the entire record as a whole.[32]

Further, the Court may not reverse an ALJ decision due to a harmless error.[33] An error is harmless "where it is inconsequential to the [ALJ's] ultimate

---

[29] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[30] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[31] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[32] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[33] *Molina*, 674 F.3d at 1111.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

nondisability determination."[34] The party appealing the ALJ's decision generally bears the burden of establishing harm.[35]

## IV.    Analysis

**A.    Medical Opinions: Plaintiff establishes error.**

Plaintiff challenges the ALJ's assignment of little weight to Plaintiff's primary care physician Ronaldo Luanzon, M.D. The Court agrees the ALJ erred by failing to meaningfully explain why he discounted this medical opinion and therefore the Court is unable to assess whether the ALJ's findings are supported by substantial evidence.

The weighing of medical-source opinions is dependent upon the nature of the medical relationship, i.e., 1) a treating physician; 2) an examining physician who examines but did not treat the claimant; and 3) a reviewing physician who neither treated nor examined the claimant.[36] Generally, more weight is given to the opinion of a treating physician than to an examining physician's opinion and both treating and examining opinions are to be given more weight than the opinion of a reviewing physician.[37]

---

[34] *Id.* at 1115 (quotation and citation omitted).

[35] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

[36] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

[37] *Id.*; *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

When a treating physician's or evaluating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and when it is contradicted, it may be rejected only for "specific and legitimate reasons" supported by substantial evidence.[38] A reviewing physician's opinion may be rejected for specific and legitimate reasons supported by substantial evidence, and the opinion of an "other" medical source[39] may be rejected for specific and germane reasons supported by substantial evidence.[40] The opinion of a reviewing physician serves as substantial evidence if it is supported by other independent evidence in the record.[41]

On August 11, 2022, Dr. Luanzon completed a medical source statement.[42] Dr. Luanzon diagnosed Plaintiff with ADHD, asthma, PTSD, and migraines, and

---

[38] *Lester*, 81 F.3d at 830.

[39] *See* 20 C.F.R. § 404.1502 (For claims filed before March 27, 2017, acceptable medical sources are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, qualified speech-language pathologists, licensed audiologists, licensed advanced practice registered nurses, and licensed physician assistants within their scope of practice—all other medical providers are "other" medical sources.).

[40] *Molina*, 674 F.3d at 1111; *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).

[41] *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

[42] AR 380-84.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

opined that Plaintiff would be absent from work four or more days a month as a result of intermittent debilitating exacerbation of her headaches.[43]

The ALJ discounted Dr. Luanzon's opinion because 1) he did not point to treatment records showing findings of intensity and frequency such that this level of absenteeism was established; 2) a significant portion of his treatment notes indicated Plaintiff's primary reason for visiting was unrelated to alleged migraines; and 3) his opinion does not have sufficient backing in the record to give significant weight.

First, the ALJ discounted Dr. Luanzon's check-box opinion because he "did not provide narrative justification for this limitation" or "point to treatment records showing findings of intensity and frequency such that this level of absenteeism was established."[44] Individual medical opinions are preferred over check-box reports.[45] An ALJ may permissibly reject check-box reports that do not contain any explanation of the bases for their conclusions.[46] However, here, Dr. Luanzon explained that "even at stable condition, patient continues to have intermittent

---

[43] AR 381 & 384.

[44] AR 1041

[45] *Crane v. Shalala,* 76 F.3d 251, 253 (9th Cir. 1996); *Bray,* 554 F.3d at 1228 (recognizing that a medical opinion may be rejected if it is conclusory or inadequately supported).

[46] *Garrison,* 759 F.3d at 1014 n.17.

debilitating exacerbation of her headaches."[47] Even if Dr. Luanzon's opinion was found to be "conclusory" or "brief," the ALJ may only "discredit a treating physicians' opinions that are conclusory, brief, *and unsupported by the record as a whole or by objective medical findings*."[48] Here, the ALJ did not explain why Dr. Luanzon's opinion was inconsistent with the longitudinal record or objective medical findings. Thus, the ALJ erred in discounting Dr. Luanzon's opinion for these reasons.[49]

The ALJ also discounted Dr. Luanzon's opinion because a "significant portion of Dr. Luanzon's treatment notes indicate [Plaintiff's] primary reason for visiting was unrelated to alleged migraines."[50] While the number of times a plaintiff meets with a provider is relevant in assessing the weight of that source's medical opinion,[51] the ALJ did not explain why visits to Dr. Luanzon's for treatment outside of migraines would prevent Dr. Luanzon from being familiar with Plaintiff's reported migraines, when Plaintiff saw Dr. Luanzon's for migraines, Dr. Luanzon prescribed Plaintiff migraine medications, and referred

---

[47] *See* AR 384, 620, & 625.

[48] *Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) (emphasis in original) (citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004)).

[49] *See* AR

[50] AR 1041.

[51] *See* 20 C.F.R.§ 416.927(c).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Plaintiff to a neurologist for her migraines.[52] Thus, the ALJ erred in failing to explain his interpretation of this conflicting evidence.[53]

Lastly, the ALJ found that Dr. Luanzon's opinion was inconsistent with the longitudinal medical record. While consistency with the medical record is a factor for the ALJ to consider, the ALJ did not explain in the paragraph pertaining to Dr. Luanzon why the opinion was inconsistent with the longitudinal record.[54] In other sections of the opinion, the ALJ discussed portions of the medical record and other medical opinions, but the ALJ's opinion still as a whole does not permit the Court to meaningfully assess whether the ALJ's finding that Dr. Luanzon's opinion was

---

[52] *See* AR 1041, 611 (Dr. Luanzon prescribed Plaintiff Fioricet with Codeine, Gabapentin 300 mg., and Gabapentin 100 mg.); 625 (3/29/11 Dr. Luanzon treatment notes: Plaintiff's chief complaint follow-up on migraine and depression. Referred Plaintiff to Dr. Freedman for further evaluation and management for her migraines.), 620 (6/3/11 Dr. Luanzon treatment notes: Plaintiff's chief complaint is migraine, recommend continue to see Dr. Atwal); 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6).

[53] *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986) (An ALJ must set out a "detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.")

[54] *See Lingenfelter*, 504 F.3d at 1042 (recognizing that the ALJ is to consider the consistency of the medical opinion with the record as a whole).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

inconsistent with the longitudinal record relating to Plaintiff's impairment is supported by substantial evidence, particularly because the record reflects multiple emergency department visits for migraines, despite Plaintiff adhering to prescribed treatment, and limitations in Plaintiff's functioning when experiencing a migraine.[55]

The ALJ's finding in the weighing of Dr. Luanzon's opinion offers an insufficient explanation to permit the Court to assess whether this finding is rational and supported by substantial evidence.[56]

**B.      Step Three (Listings): Plaintiff establishes error.**

Plaintiff contends the ALJ erred by finding that Plaintiff's impairments did not meet or medically equal Listing 11.02B, singly or in combination. The Court agrees.

---

[55] *See* AR 250-51, 255, 498, 505, 512, 521, 620, 528, 534, 543-46, 945, & 1021; *Nguyen v. Chater*, 100 F.3d 1362, 164 (9th Cir. 1996).

[56] *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (requiring the ALJ to identify the evidence supporting the found conflict to permit the Court to meaningfully review the ALJ's finding); *Blakes v. Barnhart,* 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.").

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Listing 11.02B requires that the migraines occur at least once per week for three consecutive months, despite adherence to prescribed treatment.[57] When determining if a claimant's condition may equal Listing 11.02, the following considerations are relevant: any detailed descriptions from an acceptable medical source of the typical headache events, including all associated phenomena; the frequency of the headache events; adherence to prescribed treatment; side effects of treatment; and limitations in functioning that may be associated with the headache disorder or its treatment.[58]

The ALJ found Plaintiff's migraines did not equal Listing 11.02B, as her migraines did not satisfy the required frequency or intensity.[59]

First, the ALJ considered the testimony of testifying expert, Dr. Debolt, that Plaintiff's self-reported migraines are not sufficient to establish she has headaches or that the intensity of the headaches satisfies the listing, and the lack of neurological treatment, which Dr. Debolt believes is required to establish the frequency and intensity factors.[60]

---

[57] 20 C.F.R. § 404, Appendix 1 to Subpart P, § 11.00.

[58] SSR 19-4p.

[59] AR 1035-36.

[60] AR 1036.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Dr. Debolt testified that Plaintiff's migraines and asthma, taken together, did not equate to any exertional limitations.[61] Dr. Debolt opined that Plaintiff's frequent visits to the emergency room did not equate to Listing 11.02B in large part "because [Plaintiff] has not been evaluated by a headache specialist or a neurologist."[62] Dr. Debolt went on to explain that it was his interpretation that the condition at issue has to be there for a year, and that this record did not show Plaintiff's headaches occurred "once a week for more than a few months."[63]

The ALJ erroneously relied on Dr. Debolt's testimony relating to Plaintiff not seeing a neurologist and that when considering Listing 11.02, the frequency of the migraines needs to be at least for a year. The record here shows Plaintiff has been evaluated by two neurologists.[64] In addition, when determining whether an individual is disabled for SSA purposes, there must be evidence that the claimant's impairments constitute more than slight abnormalities and have more than a minimal effect on the claimant's ability to perform basic work activities for a continuous period of twelve months.[65] But when determining if a claimant's impairments equal Listing 11.02B, its not a twelve month period that is considered

---

[61] AR 1070.

[62] AR 1085.

[63] AR 1089.

[64] AR 1002 & 581-82.

[65] SSR 85-28 & 82-52.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

but whether the claimant's migraines occur at least once per week for three consecutive months, despite adherence to prescribed treatment.[66]  Dr. Debolt—and the ALJ—failed to appreciate this Listing 11.02B distinction.

Second, the ALJ found that the record, even when considering Plaintiff's self-reports, did not occur with the regularity required of the listing for three consecutive months during the relevant period. The frequency of migraines is a relevant consideration in determining if a claimant's migraines is of equal severity to Listing 11.02B.[67] Treatment records show Plaintiff complained of headaches several times a month, if not daily at times,[68] which the ALJ acknowledged in his decision.[69] However, the ALJ cites to nothing in the record nor provides an explanation regarding the frequency of Plaintiff's headaches. The ALJ's finding in this regard offers an insufficient explanation to permit the Court to assess whether this finding is rational and supported by substantial evidence, particularly when

---

[66] 20 C.F.R. § 404, Appendix 1 to Subpart P, § 11.00.

[67] *See* 20 C.F.R. § 404, Appendix 1 to Subpart P, § 11.00; SSR 19-4p.

[68] AR 1021 (2/16/12 Dr. Atwal treatment notes: "[Plaintiff] has tried imitrex, zomig, relpax, maxalt, verapamil, propranolol, topimax, depakoate, amitriptyline, gabapentin, fioricet, and multiple seizure medications without success").

[69] AR 1039.

1

2

the record indicates that Plaintiff reported frequent headaches to her treatment provider.[70]

3

4

5

6

7

8

9

10

Third, the ALJ found Plaintiff's lack of follow-up with referrals to specialists represented non-adherence with medical treatment, regardless for the reason of non-adherence.[71] The ALJ applied this reasoning throughout his decision. While adherence with medical treatment is a relevant consideration,[72] the record here shows Plaintiff had been evaluated by at least two neurologists – upon referral.[73] The record also shows that Plaintiff tried multiple medications, without success, in an attempt to relieve her headache symptoms.[74] Thus, Plaintiff's complete lack of

11

12

13

14

15

16

[70] *See*, *e.g.,* AR 287, 289, 291, 295, 300, 304, 307, 311, 312, 426-35, 487, 498, 505, 562, 580-82, & 620; *see also Embrey*, 849 F.2d at 421-22) (requiring the ALJ to identify the evidence supporting the found conflict to permit the Court to meaningfully review the ALJ's finding); *Blakes,* 331 F.3d at 569 ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.").

17

18

[71] AR 1036.

19

[72] *See* SSR 19-4p.

20

21

[73] AR 1002 (follow up visit for headaches with neurologist, Sarabjit, Atwal, M.D.); AR 581-82 (visit for neurological consultation with Michael Freedman, M.D. after referral by Dr. Luanzon).

22

[74] AR 312, 1002, & 1021.

23

follow-up with referrals to neurological or headache specialists is not supported by the record.

Lastly, the ALJ found there was a lack of objective or observational evidence that demonstrates the severity of Plaintiff's migraines equate with "typical dyscognitive seizures."[75] However, outside of discussing Plaintiff's "gainful activity from 2015 through 2017," the ALJ neither cites to nor discusses any evidence that relates to the severity of Plaintiff's symptoms during the closed period. The Court understands the difficulty in finding sufficient evidence to evaluate a claimant's reported severity and frequency of her headaches, but there is not sufficient explanation of the evidence to permit the Court to assess whether the ALJ's severity of finding is rational and supported by substantial evidence.[76]

On remand, in evaluating whether Plaintiff's headache disorder is equal in severity and duration to the criteria in 11.02B, the following is to be considered: detailed descriptions from an acceptable medical source of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example many medications used for treating a headache disorder can produce drowsiness, confusion, or inattention); and limitations in function that may be associated with

---

[75] AR 1036.

[76] *Embrey*, 849 F.2d at 421-22; *Blakes,* 331 F.3d at 569.

the headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).[77]

## C.    Other Steps: The ALJ must reevaluate Plaintiff's symptom reports and lay witness statements.

Plaintiff argues that the ALJ also misweighed Plaintiff's symptom reports and lay witness statements. Because the ALJ's step-three finding was based on an erroneous weighing of the medical evidence, the ALJ on remand is to proceed with a new sequential analysis beginning at step three.

## D.    Remand for Further Proceedings

Plaintiff submits a remand for payment of benefits is warranted. However, even if Plaintiff's physical impairments are considered severe and the RFC is revised to include all or many of the opined limitations, it is not clear that there is no work existing in significant numbers that Plaintiff can perform. Therefore, the record creates serious doubt that Plaintiff is disabled. Remand for further proceedings, rather than for an award of benefits, is necessary.[78]

---

[77] *See* SSR 19-4p.

[78] *See Garrison*, 759 F.3d at 1021; *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017).

On remand, the ALJ is to reweigh the medical-opinion evidence of Dr. Luanzon, Plaintiff's symptom reports, and lay witness statements, and reevaluate the sequential process beginning at step three.

## V.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 9**, is **GRANTED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 11**, is **DENIED**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

4.    The case shall be **CLOSED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order, provide copies to all counsel, and close the file.

**DATED** this 13th  day of May 2020.

_____
s/Edward F. Shea
EDWARD F. SHEA
Senior United States District Judge